# EXHIBIT A

Law Office of Heath S. Comley
116 Orange Street
Providence, RI 02903

Mendes & Mount
750 Seventh Ave.
New York, NY 10019-6829



FIRST-CLASS

US POSTAGE
$ 008.650
02 7H
0001312190
MAILED FROM ZIP CODE 02903
MAY 24 2021
PITNEY BOWES

7016 0910 0000 6258 3570

**HEATH S. COMLEY**
Attorney at Law

**RECEIVED**

MAY 2 7 2021

M. & M., LLP
Answered          FILE

<u>LICENSED</u>
Rhode Island
Massachusetts

May 24, 2021

Mendes & Mount
750 Seventh Ave.
New York, NY 10019-6829

Re:    Pawtuxet Village Properties, LLC v. Lloyd's

To Whom It May Concern:

Pursuant to an insurance contract between my client Pawtuxet Village Properties, LLC ("Pawtuxet") and Those Certain Underwriters at Lloyd', Subscribing to Policy No. XSV12491 ("Lloyd's"), please accept the enclosed Summons, Verified Complaint, Language Assistance Form and the pertinent pages regarding service of process in the Insurance Contract between the parties, as notice that a lawsuit has been filed in Providence Superior Court, Providence, Rhode Island, related to Lloyd's denial of a claim presented by Pawtuxet on or about April 13, 2020 in Warwick, Rhode Island.

Thank you for your attention to this matter.

Sincerely,

Heath S. Comley

w/enclosures

116 Orange Street, Providence, Rhode Island 02903
Tel: (401) 331-5505 Fax: (401) 331-6110 Email: comleylaw@gmail.com



# Lloyd's Certificate

This Insurance is effected with certain Underwriters at Lloyd's London.

This Certificate is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

The Assured is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration. All inquiries regarding this Certificate should be addressed to the following Correspondent:

XS Brokers Insurance Agency, Inc.
13-17 Temple Street
Quincy, MA
02169
U.S.A.

NMA2868 (amended) (24/08/00) Printed by the Corporation of Lloyd's.

**CERTIFICATE PROVISIONS**

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.**. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon Messrs Mendes & Mount, 750 Seventh Avenue, New York, New York 10019-6829, U.S.A.and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

7. **It is noted** and agreed that wherever the word "Policy" appears herein it shall be deemed to read "Certificate"

8. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.



# STATE OF RHODE ISLAND

## SUPERIOR COURT

### SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2021-03439 |
| **Plaintiff**<br>Pawtuxet Village Properties, LLC<br>v.<br>Those Certain Underwriters at Lloyd's, London Sbscribing to Policy No. XSV12491 et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Heath S. Comley, Esq. |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>116 Orange Street<br>Providence, RI 02903<br><br>Tel.: (401) 331-5505 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>750 Seventh Ave<br>New York NY 10019 |

**TO THE DEFENDANT, Those Certain Underwriters at Lloyd's, London Sbscribing to Policy No. XSV12491:** c/o Messr.s Mendes& Mount 750 Seventh Ave. New York, NY 10019-6829

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/18/2021. | /s/ Stephen Burke<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2020)



# STATE OF RHODE ISLAND

## SUPERIOR COURT

| **Plaintiff** | **Civil Action File Number** |
|---|---|
| Pawtuxet Village Properties, LLC | PC-2021-03439 |
| v. | |
| Those Certain Underwriters at Lloyd's, London Sbscribing to Policy No. XSV12491 et al. | |
| **Defendant** | |

---

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Those Certain Underwriters at Lloyd's, London Sbscribing to Policy No. XSV12491, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

SC-CMS-1 (revised July 2020)

Page 1 of 2



SC-CMS-1 (revised July 2020)



## STATE OF RHODE ISLAND

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

| SERVICE DATE: ___ / ___ / ___ | SERVICE FEE $ _____ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

Signature

State of _____

County of _____

On this _____ day of _____, 20___, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____

My commission expires: _____

Notary identification number: _____

Page 2 of 2

SC-CMS-1 (revised July 2020)



សូមមើលសេចក្តីជូនដំណឹងនេះជាភាសាខ្មែរ អេស្ប៉ាញ និងព័រទុយហ្គាល់នៅក្នុងទំព័រភ្ជាប់។

**សេចក្តីជូនដំណឹង**

**លោកអ្នកមានរឿងក្តីនៅក្នុងប្រព័ន្ធតុលាការរដ្ឋ Rhode Island។**

អ្នកមានសិទ្ធិទទួលបានអ្នកបកប្រែដោយឥតគិតថ្លៃ។

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor, Room 401
250 Benefit Street
Providence, RI 02903

interpreterfeedback@courts.ri.gov

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

9/15

---



See this notice in Cambodian, Spanish, and Portuguese on the attached pages. Español: Véase esta subnotificación en camboyano, español y portugués en las páginas adjuntas. Português: Leia esta subnotação em cambojano, espanhol e português nas páginas em anexo.

**N O T I C E**

**You have a case in the Rhode Island state court system.**

**You have the right to an interpreter at no cost to you.**

Rhode Island Supreme Court Executive Order 2012-05 states that when a Limited-English Proficient (LEP) person appears in court, the Rhode Island Judiciary will provide a free authorized interpreter for the defendant, plaintiff, witness, victim, parent of a juvenile, or someone with a significant interest in the court proceeding. This interpreting service is provided at no cost to the parties and in all types of cases, both civil and criminal. Court interpreters work in all the courthouses of the Rhode Island state court system.

To schedule an interpreter for your day in court, you have the following options:

1. Call the Office of Court Interpreters at (401) 222-8710, or
2. Send an email message to interpreterfeedback@courts.ri.gov or
3. Visit the Interpreters' office to schedule an interpreter:

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor, Room 401
250 Benefit Street
Providence, RI 02903

When requesting an interpreter, please provide the following information:

- The name and number of your case
- The language you are requesting
- The date and time of your hearing
- The location of your hearing
- Your name and a telephone number where we can reach you or your lawyer

For more information in Portuguese, Russian, and Spanish, including a listing of court forms that are available in Spanish, please visit our website on the Internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx

To request a translation of this notice into any other language, please call the Office of Court Interpreters at (401) 222-8710. It would be helpful to have an English speaker with you when you call.

The Rhode Island Judiciary is committed to making the courts accessible to all.

The Office of Court Interpreters
Licht Judicial Complex, Fourth
Floor Room 401
250 Benefit Street
Providence, RI 02903

9/15

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
Español: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
Português: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.



# A V I S O

## Usted tiene el derecho a tener un intérprete sin costo para usted.

La Orden Ejecutiva 2012-05 del Tribunal Supremo de Rhode Island dicta que cuando una persona que tiene un dominio limitado del inglés (LEP) comparece ante la corte, el Sistema Judicial de Rhode Island le proveerá un intérprete autorizado gratis sea el cuando sea el caso. Este servicio de interpretación se le proveerá sin costo alguno a los participantes en toda clase de casos, sea civil o penal.

Los intérpretes judiciales trabajan en todos los tribunales del Sistema Judicial de Rhode Island.

Para solicitar un intérprete para su comparecencia en el tribunal, usted tiene las siguientes opciones:

1. Llamar a la Oficina de Intérpretes en el tribunal al 401-222-8710; o

2. Mandar un correo electrónico a interpreterfeedback@courts.ri.gov o

3. Presentarse a la Oficina de Intérpretes para solicitar un intérprete:

   The Office of Court Interpreters
   Licht Judicial Complex
   Cuarto Piso, Oficina 401 A-B
   250 Benefit Street
   Providence, RI 02903

Al solicitar un intérprete, por favor provea la siguiente información:

- El nombre y el número de su caso
- El idioma que solicita
- La fecha y hora de su audiencia
- Dónde va a tener lugar su audiencia
- Su nombre y número de teléfono por el cual una podamos ponernos en contacto con usted o con su abogado.

Para obtener más información en portugués, ruso o español, incluyendo una lista de formularios de la corte que está disponibles en español, visite nuestra página de internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx

Para solicitar la traducción de este aviso en cualquier otro idioma, por favor llene a la oficina de intérpretes al (401) 222-8710. Ayudará si usted puede estar en compañía de una persona que habla inglés cuando llame.

El sistema jurídico de Rhode Island se compromete a proporcionar a todas las personas mejor acceso a los tribunales.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

---

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
Cambɔyan: SAMPLE. [Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.]
Español: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
Português: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# N O T I F I C A Ç Ã O

## V. Ex.ª têm direito aos serviços gratuitos de um intérprete.

A Ordem Executiva 2012-05 do Supremo Tribunal de Rhode Island prevê que quando uma pessoa com conhecimentos limitados da língua inglesa (Limited-English Proficient) (LEP) comparece em tribunal, a Administração Judiciária de Rhode Island disponibiliza-lhe gratuitamente os serviços de um intérprete autorizado a um réu, autor, testemunha, vítima, pai ou mãe de um menor ou alguém com interesse significativo no processo judicial. O serviço de intérprete é prestado gratuitamente às partes e em todos os tipos de processo, sejam eles cível ou penal. Os intérpretes do tribunal trabalham em todos os tribunais do sistema judiciário do Estado de Rhode Island.

Para aceder ao serviços de um intérprete o seu dia no tribunal, tem as seguintes opções:

1. Telefonar para o Gabinete de Intérpretes Judiciais através do n.º (401) 222-8710, ou

2. Enviar uma mensagem de correio eletrónico para interpreterfeedback@courts.ri.gov, ou

3. Dirigir-se ao gabinete de intérpretes para aceder ao serviços de um intérprete:

   Gabinete de Intérpretes Judiciais
   Complexo Judicial Licht
   Quarto Piso, Sala 401
   250 Benefit Street
   Providence, RI 02903

Quando solicitar os serviços de um intérprete deve fornecer os seguintes dados:

- O nome e o número do seu processo
- O idioma que solicita
- A data e hora da sua audiência
- O local da sua audiência
- O seu nome e o número de telefone para o podermos contactar a si ou ao seu advogado

Para obter mais informações em português, russo e espanhol, incluindo uma lista dos formulários judiciais disponíveis em espanhol, visite o nosso website na internet:

https://www.courts.ri.gov/Interpreters/englishversion/Pages/default.aspx

Para solicitar uma tradução desta notificação para qualquer outro idioma, telefone para o Gabinete de Intérpretes Judiciais através do número (401) 222-8710. Recomenda-se que esteja acompanhado por alguém que fale inglês quando fizer a chamada.

A Administração Judiciária de Rhode Island está empenhada em tornar os tribunais acessíveis para todos.

Gabinete de Intérpretes Judiciais
Complexo Judicial Licht
Quarto Piso, Sala 401
250 Benefit Street
Providence, RI 02903

9/15

Case Number PC-2021-03249
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 12 of 35 PageID #: 16

STATE OF RHODE ISLAND                                    SUPERIOR COURT
PROVIDENCE, SC.


PAWTUXET VILLAGE PROPERTIES, LLC
                *Plaintiff*

Vs.                                            C. A. No. PC-2021 -

THOSE CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON SUBSCRIBING TO POLICY
NO. XSV12491; VANGUARD CLAIMS
ADMINISTRATION, INC.
                *Defendants*


## VERIFIED COMPLAINT

1.    Plaintiff, Pawtuxet Village Properties, LLC ("Pawtuxet"), is a Rhode Island limited

liability corporation with a principal place of business at 2077 Elmwood Ave., City of Warwick,

State of Rhode Island.

2.    Defendant, Those Certain Underwriters at Lloyd's, London Subscribing Policy No.

XSV12491 ("Lloyd's"), is upon information and belief, a number of various insurance

underwriters who provided a commercial insurance policy to Pawtuxet.

3.    Defendant, Vanguard Claims Administration, Inc. ("Vanguard"), is upon information and

belief a New Jersey corporation with a principal place of business at 108 Euclid Street, in the Town

of Woodbury, State of New Jersey, 08096-1701.

4.    The amount in controversy is sufficient to invoke the jurisdiction of this Honorable Court,

venue is proper pursuant to the General Laws of Rhode Island §9-4-4 and jurisdiction of the out

of state corporate defendants is pursuant to §9-5-33.

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 13 of 35 PageID #: 17

## BACKGROUND FACTS

5.   Pawtuxet was formed on or about April 28, 2016 as a real estate management company.

6.   Pawtuxet purchased certain real property at 270 Post Road in Warwick, Rhode Island ("Premises") on or about May 17, 2016.

7.   The Premises was constructed in 1987 and is a single-story building with approximately 33,439 SF of living area and a corresponding size unfinished basement.

8.   As of April 2020, Pawtuxet had utilized approximately Fifty (50%) percent of the Premises area for some office use, as well as storing myriad equipment and supplies associated with the real estate business.

9.   On the morning of April 14, 2020, Pawtuxet's principal arrived at the Premises and saw numerous roof materials lying on the ground as well as several areas on the roof with missing shingles, which was not present the last time he was on the Premises three (3) days earlier.

10.   The damage was a new condition which he assumed was caused by the previous evenings weather during which a storm with high winds and rain passed through the area.

11.   Plaintiff's principal promptly notified his insurance agent of the damage and was provided a Property Loss Notice form for Lloyd's, the commercial insurance carrier providing property coverage at that time.

12.   Plaintiff's principal contacted Lloyd's to report the loss pursuant to a CAT Storm/Hurricane, i. e. windstorm, cause of loss and was told that due to the number of other wind related claims in the area it would be a week before anyone could be sent out to investigate the claim.

13.   Plaintiff's principal informed Lloyd's, without objection, that because more rain was forecast, he would arrange for temporary repairs to prevent further damage.

Case Number: PC-2019-10319
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 14 of 35 PageID #: 18

14.    On April 15, 2020, Plaintiff submitted the Property Loss Notice form citing the cause of loss as "due to wind storm".

15.    Defendant Lloyd's, through its Third-Party Administrator, defendant Vanguard, hired a local insurance adjusting company to investigate the loss at the Premises.

16.    On April 23, 2020, the assigned claims specialist inspected the Premises.

17.    The claims adjuster opined to Plaintiff's principal that in his opinion the wind speeds occurring on the evening of April 13th into the morning hours of April 14th, reached 56 mph and were thus insufficient to cause the damage he found, but volunteered that his delay in getting to Pawtuxet was due to the number of wind storm claims he had investigated during the previous week.

18.    The claims adjuster expressly used the term "vandalism" in discussing the damage with Plaintiff's personnel and asserted the roof damage was more consistent with a man-made cause of loss, and not the windstorm initially believed by Plaintiff.

19.    Vanguard also hired an engineer to investigate the Pawtuxet premises and he also determined the damage was man-made, not due to wind storm.

20.    On June 4, 2020, Vanguard forwarded a letter to Plaintiff denying the wind storm claim based upon exclusions under the insurance policy including "wear and tear", "hidden or latent defect", "faulty, inadequate or defective" "workmanship, repairs, renovation, or maintenance" or "dishonest or criminal acts" by "you, your partners...or employees", to wit, "...consistent with man-made damages, ...not caused by a storm or high winds." (Exhibit 1)

21.    Based upon the Lloyd's windstorm claim denial, Plaintiff contacted its insurance agent on June 9, 2020 and confirmed that Vandalism, to wit, "man-made damages", is a covered loss under the Lloyd's policy.

3

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS     Document 1-1     Filed 06/15/21     Page 15 of 35 PageID #: 19

22.     Plaintiff submitted a second Property Loss Notice to Lloyd identifying the cause of loss as vandalism.

23.     As required by the insurance contract terms, Plaintiff's property manager filed a report of suspected vandalism with the Warwick Police Department, also on June 9, 2020.

24.     After receiving the Vandalism loss claim, Defendants aggressively investigated the claim by requesting sworn statements, documentation and closed-circuit video information from Plaintiff.

25.     Plaintiff fully cooperated by either providing, or thoroughly explaining the absence of, certain requested information throughout the insurance carrier's investigation.

26.     Nevertheless, Lloyds denied coverage for Plaintiff's claim for the vandalism loss in a letter dated January 22, 2021. **(Exhibit 2)**.

27.     The first basis for the Defendants' January 22, 2021 coverage denial was predicated on the building being vacant for 60 or more days prior to the loss, however, Plaintiff had clearly explained the building was vacant when purchased in 2016 but was approximately 50 percent occupied with Plaintiff's business materials, including office space, when the loss occurred.

28.     The second basis for denying the vandalism claim was that Defendants believed the damage to the roof was "man-made", which is a given inasmuch as damage by vandals will presumably always be of human origin.

29.     Defendants denied Plaintiff's claim for vandalism because Defendants must have concluded Plaintiff, its agents or employees, intentionally damaged its own roof.

30.     On information and belief, Lloyd's investigation never considered anyone but Plaintiff, its agents or employees, as the source of vandalism.

4

Case Number: PC-2021-03419
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS     Document 1-1     Filed 06/15/21     Page 16 of 35 PageID #: 20

## COUNT I
### *Breach of Contract*

31.    Plaintiff, Pawtuxet, incorporates paragraphs 1 – 30 of the Verified Complaint as if set forth in full herein.

32.    Plaintiff and defendant, Lloyd's, were parties to a contract of insurance.

33.    Plaintiff paid good and valuable consideration for the insurance contract.

34.    Defendant, Lloyd, breached the contract by denying coverage for the loss to Pawtuxet's property.

35.    Pawtuxet has been severely damaged by Lloyd's breach.

WHEREFORE, Pawtuxet demands judgment in an amount in excess of Ten Thousand and 00/100 ($10,000.00) Dollars, statutory interest, costs and such other and further relief as this Honorable Court deems just.


## COUNT II
### *Breach of the Covenant of Good Faith and Fair Dealing*

36.    Pawtuxet incorporates by reference paragraphs 1 – 30 and Count I as if set forth in full herein.

37.    Pawtuxet was at all relevant times a first party insured to the insurance contract with Lloyd's.

38.    Lloyd's windstorm investigation included two different independent contractors who visited the Premises.

39.    Both investigators, upon information and belief, determined the damage to Pawtuxet's roof was intentionally man-made by Pawtuxet and not due to windstorm.

40.    Pawtuxet contacted its insurance agent and confirmed that "vandalism" was a covered cause of loss under the applicable insurance contract with Lloyd's.

5

41.    Thereafter, Defendant aggressively pursued its investigation of Plaintiff to justify their initial conclusion that Pawtuxet deliberately damaged its own roof.

42.    Defendants' assumption that Pawtuxet deliberately damaged its property is a breach of the covenant of good faith implicit in the insurance contract between the parties.

WHEREFORE, Plaintiff Pawtuxet demands judgment in an amount in excess of Ten Thousand and 00/100 ($10,000.00) Dollars, statutory interest, costs and such other and further relief as this Honorable Court deems just.

## COUNT III
### *Unjust Enrichment*

43.    Pawtuxet incorporates by reference paragraphs 1 – 30 and Counts I and II of the Verified Complaint as if set forth in full herein.

44.    Lloyd's denial of Pawtuxet's property damage loss claim is not justified.

45.    The funds retained by Lloyd's resulting from not paying Pawtuxet for its loss has enriched Lloyd's to Pawtuxet's detriment.

46.    Lloyd's retention of the monies due and owing is unjust.

WHEREFORE, Plaintiff Pawtuxet demands judgment in an amount in excess of Ten Thousand and 00/100 ($10,000.00) Dollars, statutory interest, costs and such other and further relief as this Honorable Court deems just.

## COUNT IV
### *Unfair Claims Settlement Practice R.I.G.L. 27-9.1-4*

47.    Pawtuxet incorporates by reference paragraphs 1 – 30 and Counts I, II and III of the Verified Complaint as if set forth in full herein.

48.    Defendants denied Pawtuxet's windstorm claim and accused Pawtuxet of deliberately

Case Number: PC-2019-
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

removing the roof materials.

49.     Defendants intentionally failed to perform a reasonable investigation; never considering the possibility of persons unknown to Plaintiff's principal and/or agents, as causing the damage to Pawtuxet's roof.

WHEREFORE, Plaintiff Pawtuxet demands judgment in an amount in excess of Ten Thousand and 00/100 ($10,000.00) Dollars, statutory interest, costs and punitive damages in an amount in the discretion of the fact-finder, statutory prejudgment interest, reasonable attorney fees, costs and such other and further relief as this Honorable Court deems just.

## COUNT V
### *Bad Faith pursuant to R.I.G.L. 9-1-33*

50.     Pawtuxet incorporates by reference paragraphs 1 – 30 and Counts I through IV of the Verified Complaint as if set forth in full herein.

51.     Defendants intentionally and recklessly failed to fully investigate the alleged man-made damage to the Premises.

52.     After receiving the Pawtuxet claim as a Vandalism loss, Defendants never broadened the investigation to include any other persons as vandals other than Plaintiff's principal and manager.

53.     Defendants' investigation of the Plaintiff's roof loss was performed in a conclusory and bad faith manner.

WHEREFORE, Plaintiff Pawtuxet demands judgment in an amount in excess of Ten Thousand and 00/100 ($10,000.00) Dollars, statutory interest, costs and punitive damages in an amount in the discretion of the fact-finder, statutory prejudgment interest, reasonable attorney

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 19 of 35 PageID #: 23

fees, costs and such other and further relief as this Honorable Court deems just.


Pawtuxet Village Properties, LLC by
Its President, Jeffrey Butler


STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this _17th_ day of May, 2021.


Notary Public:
My Commission Expires:

Heath S. Comley, Esquire
Notary Public, State of Rhode Island
My Commission Expires Mar. 16, 2022



Pawtuxet Village Properties, LLC
By its attorney,


/s/ Heath S. Comley
Heath S. Comley, Esq. #3932
116 Orange Street
Providence, RI 02903
T - (401) 331-5505
F - (401) 331-6110
comleylaw@yahoo.com

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

# EXHIBIT 1

Case Number: PC-2021-03439
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victória H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 21 of 35 PageID #: 25

EVERY CLAIM COUNTS.

June 4, 2020                    SENT VIA PRIORITY MAIL

**VANGUARD**
CLAIMS ADMINISTRATION, INC.

PAWTUXET VILLAGE PROPERTIES LLC
2121 Elmwood Ave
Warwick, RI 02888

| | | |
|---|---|---|
| Our Principal | : | Certain Underwriters at Lloyd's, London |
| Policy No. | : | XSV12491 |
| Policy Period | : | 05/17/2019 to 05/17/2020 |
| Location of Loss | : | 270 Post Rd, Warwick, RI 02886 |
| Cause of Loss | : | CAT Storm/Hurricane |
| Date of Loss | : | 04/13/2020 |
| Our File No. | : | XS07682 |

Dear Insured(s):

As you are aware, VANGUARD CLAIMS ADMINISTRATION, INC. (VCA) has been retained by Certain Underwriters at Lloyd's, London ("Underwriters") to investigate and adjust the above referenced claim. On 04/15/2020, it was reported to Underwriters that on 04/13/2020, CAT Storm/Hurricane caused damage to your property. As a result of this occurrence, coverage has been requested under Policy Number XSV12491.

As part of Underwriters' investigation, our office retained the services of Shane Sartini of Vincent Pellegrino Insurance Adjusters, Inc. to inspect the damages to your location. The investigation revealed the damages to the risk location did not appear to be weather related. The adjuster advised that there were multiple missing shingle patches throughout the rear slope of the property. He witnessed patches of shingles with multiple rows of shingles still intact on the ground that matched the missing shingle patches on the roof. These shingle patches had newer nails attached still attached to them.

The adjuster also notes that there were scrape marks, diagonal tears and clean (non-rusted) nails to the damaged shingles. The adjuster stated that this is not reflective of wind damages. The adjuster obtained a NOAA weather report, which states that the wind gusts on the date of loss were 56 mph. The adjuster advised that these types of damages would not have occurred at these wind speeds. It would take wind speeds of over 90 mph to cause the types of damage observed by the adjuster.

The adjuster also obtained a recorded statement from you. Your uncle, Jeffrey Butler, who also works at the property, found the damages on 4/14/20 and retained Jaedyn Construction to conduct the temporary repairs to the roof.

   

VANGUARDCLAIMS.COM          888 601 3200          888 601 8035          P.O. BOX 845, WOODBURY, NJ 08096

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 22 of 35 PageID #: 26

EVERY CLAIM COUNTS.

File No.: XS07682

In order to confirm the cause of loss, the adjuster was advised to retain an expert to assist with this file. Donan Engineering was retained to inspect the roof and provide their comments on the cause of the damages to the roof. According to Joseph W Malo, P.E. Forensic Engineer with Donan, the damage to the roof was not the result of nor is it consistent with wind related damages. According to the expert, the roof damage was man made, consistent with someone ripping the shingles from the roof.

The engineer's conclusions following his inspection are as follows:

**"The missing ridge cap shingles, gutter, and trim predate the storm event and date back to at least to August 2017. The weather data and collateral indicators of wind do not provide evidence of wind speeds that would be expected to cause damage to the roof shingles.**

**The torn and missing shingles and individual tabs are on nearly every roof slope, facing nearly all directions except north. The tear patterns of the missing shingle tabs are irregular and extend up under the overlying shingles. The removed nails, scrapes and gouges, and small pieces of remaining shingles on the roof are not consistent with the effects of wind. The torn and missing shingle tabs throughout the roof are not consistent with the effects of wind. The torn and missing shingle tabs throughout the roof are consistent with and are due to manmade damage."**

At this time, we call your attention to your policy XSV12491, effective **05/17/2019 to 05/17/2020.** Please refer to form **CP 10 30 04 02 Causes of Loss- Special Form** which states:

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section B., Exclusions; or
2. Limited in Section C., Limitations;

that follow.

**B. Exclusions**

. . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

   . . .

   d. (1) Wear and tear;
      (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

   . . .

      (4) Settling, cracking, shrinking or expansion;

   . . .

   h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
      (1) Acting alone or in collusion with others; or

Case Number: PC-2021-03392
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

EVERY CLAIM COUNTS.

File No.: XS07682

    (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

. . .

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

. . .

  **c.** Faulty, inadequate or defective:

    (1) Planning, zoning, development, surveying, siting;

    (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (3) Materials used in repair, construction, renovation or remodeling; or

    (4) Maintenance;

    of part or all of any property on or off the described premises.

---

Our investigation determined that the damages sustained to your roof are consistent with man-made damages, and not the result of damages caused by a storm or high winds. As noted in the above policy language, damages caused by "wear and tear", "hidden or latent defect", "faulty, inadequate or defective" "workmanship, repairs, renovation, or maintenance", or "dishonest or criminal acts" by "you, your partners … or employees", are specifically excluded and, therefore, coverage would not be afforded for the damages to your roof. For these reasons, Underwriters must respectfully deny coverage for any and all damage relating to or caused as a result of the above identified incident.

The actions of Underwriters or any of their agents or representatives in adjusting, investigating, inspecting, or otherwise handling this claim should not be construed as a waiver of any rights that Underwriters have under this policy and at law. To the contrary, Underwriters reserve each and every right they have under the policy and at law.

Underwriters are committed to the prompt and fair handling of all claims for coverage. If you believe that our position is incorrect or constitutes a wrongful denial, reservation of rights or rejection of this claim, you may have the matter reviewed by the Rhode Island Department of Business Regulation by calling (401) 462-9500, or by writing to the Division at this address:

Rhode Island Department of Business Regulation
1511 Pontiac Ave
Cranston, RI 02920

If additional information develops which changes the facts presented, or if you are aware of facts that are unknown to our office that would affect the outcome of this claim, please call them to our attention immediately so we may consider the same.

If you have any questions regarding the information contained within this letter, please do not hesitate to contact the undersigned. We thank you in advance for your anticipated cooperation.

   

Case Number: PC-2021-03219
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3185044
Reviewer: Victoria H

EVERY CLAIM COUNTS.

File No.: XS07682

Sincerely,

Tirfari Smith – Property Examiner
**VANGUARD CLAIMS ADMINISTRATION, INC.**
Phone: 888-601-3200 ext 306
Email: ttsmith@vanguardclaims.com

**ENCLOSURES:**

     1      Donan Engineering Report

cc:    chris@brookinsure.com
       claims@xsbrokers.com






Case Number: PC-2021-10213
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Victoria H

# EXHIBIT 2



January 22, 2021

**THOMAS M. BERGERON**
617.422.5362 (direct)
Thomas.Bergeron@WilsonElser.com

<u>VIA ELECTRONIC MAIL ONLY</u>

PAWTUXET VILLAGE PROPERTIES, LLC
c/o Stephen Litwin, Esq.
1 Ship Street
Providence, RI 02903

| | |
|---|---|
| **INSURED:** | **PAWTUXET VILLAGE PROPERTIES LLC** |
| **DATE OF LOSS:** | **~APRIL 13, 2020** |
| **POLICY NO.:** | **XSV12491** |
| **CLAIM NO.:** | **19-XS300** |
| **WILSON ELSER FILE NO.:** | **22729.00001** |

Dear Mr. Litwin:

We write on behalf of our clients, Those Certain Underwriters at Lloyd's, London subscribing to Policy No. XSV12491 ("Underwriters") with regard to the claim of Pawtuxet Village Properties, LLC ("Pawtuxet") for damage to the roof of the building located at 270 Post Road, Warwick, Rhode Island ("the Insured Property").

Underwriters have investigated the claim, and we regret to inform you that Underwriters deny coverage for the reasons set forth below.

Please note while Underwriters direct you to specific terms of the Policy below, there may be additional policy terms, conditions, or exclusions that preclude coverage in this matter. In setting forth the information below, Underwriters specifically reserve all of their rights under the Policy. Underwriters do not waive their right to deny coverage for any other reason, nor shall Underwriters be estopped from asserting any applicable defense. Underwriters further reserve their right to amend or supplement the denial as further review, investigation, and discovery warrant.

If you have any additional information that you believe might affect coverage, Underwriters invite you to provide that information to us.

**FACTS AND CIRCUMSTANCES**

Pawtuxet owns a vacant one-story nursing facility located at the Insured Property. On April 15, 2020, Pawtuxet submitted a Property Loss Notice indicating that the building had sustained roof damage "due to wind storm."

Underwriters' third-party administrator, Vanguard Claims Administration, Inc. ("Vanguard") engaged Shane Sartini of Vincent Pellegrino Insurance Adjusters to inspect the claimed damage. On April 23, 2020, Mr. Sartini met with Pawtuxet and inspected the building. Based on his investigation, Mr. Sartini concluded that the loss appeared to be man-made, rather than caused by wind. Specifically, Mr. Sartini observed patches of multiple rows of shingles on the ground, still intact and with the nails still affixed, and which matched the patches missing from the roof. Mr. Sartini also observed that the shingles had scrape marks

260 Franklin Street, 14th Floor • Boston, MA 02110 • p 617.422.5300 • f 617.423.6917

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Mississippi • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

**wilsonelser.com**

1477277v.4

and diagonal tears, and concluded that this damage was inconsistent with wind damage. Mr. Sartini likewise confirmed that the National Oceanic and Atmosphere Administration weather report from the claimed date of loss recorded peak wind gusts of 56 miles per hour, whereas wind speeds of over 90 miles per hour would be required to cause the types of damage claimed to have been caused by the wind.

Also on April 23, 2020, Mr. Sartini obtained the recorded interview of Andrew Butler, Pawtuxet's property manager ("Andrew"). Andrew stated that his uncle, Jeffrey Butler ("Jeffrey"), who owns Insured Property, noticed the damage to the roof on April 14, 2020 (the day after the alleged loss) and engaged Jaedyn Construction to make temporary repairs to the roof by utilizing tarps.

Mr. Sartini also retained Joseph W. Malo, P.E., of the engineering firm Donan Engineering, Inc., to further investigate the cause of loss. Mr. Malo inspected the building and concluded:

- The missing ridge cap shingles, gutter, and trim (claimed by Pawtuxet) predate the claimed date of loss by several years (as evidence by images obtained from Google Street View).

- The weather data and wind measures did not indicate wind speeds on the date of loss sufficient to cause the observed damage to the shingles.

- The shingles were missing from nearly every slope and direction of the roof (except facing north).

- The scrapes, nails and scratches on the missing shingles were inconsistent with the effects of wind, but rather, with man-made damage.

On June 4, 2020, based upon Mr. Sartini's investigation and Mr. Malo's inspection, Vanguard issued a denial of coverage letter on behalf of Underwriters stating that the claimed damages were excluded from coverage under the Policy as they were caused by "wear and tear", "hidden or latent defect", "faulty, inadequate or defective" "workmanship, repairs, renovation, or maintenance", or "dishonest or criminal acts" by "you, your partners . . . or employees".

On June 9, 2020, Pawtuxet submitted a second Property Loss Notice, again stating the date of loss as April 13, 2020, but now describing the loss as "Insured noticed shingles were torn off the roof of the building[.] Maybe vandalism damage[.]"

Also on June 9, 2020, Andrew contacted the Warwick Police Department, for the first time, to report the roof damage. According to the police report, Andrew met with Officer Thompson at the Insured Property. Andrew stated to Officer Thompson that he and Jeffrey arrived at the Insured Property on April 14, 2020 and found the roof damage, which they believed was caused by the thunderstorm and windstorm condition the night before. Andrew stated to Officer Thompson that he had submitted a claim to his insurance company and received correspondence from the insurer "indicating that a police report should be filed to cover the damage." Officer Thompson noted that the correspondence shown to him by Andrew indicated that the maximum wind gusts on April 13, 2020 were 56 miles per hour. Officer Thompson later "searched the Internet" and confirmed that the weather on April 13, 2020 included "thunderstorms, rain, and snow, as well as windy conditions." The police report concluded: "Due to the passage of time and the lack of evidence and w[i]tnesses Officer Thompson took a report for informational purposes only."

Our office sent numerous communications to Pawtuxet requesting the examination under oath of Jeffrey,

**WILSON ELSER**

including a certified letter dated July 17, 2020[1], an email on August 17, 2020, and a second email on September 11, 2020. All of these communications included requests for copies of the security camera footage which Andrew told the investigating police officer that he had reviewed and concluded there had been no intruders around the date of loss. Andrew responded by email on September 11, 2020, copying you as Pawtuxet's counsel, indicating that "Jeffrey Butler would like to do the interview as soon as possible." However, despite our persistent efforts to schedule the examination, Jeffrey was not made available until October 2, 2020.

During his examination, Jeffrey was unable to provide any information as to who may have caused the alleged vandalism to the roof. Jeffrey testified that he owns numerous commercial and residential properties, and that, although the Insured Property was vacant when purchased by Pawtuxet in May 2016, since then, Jeffrey's property management employees have used the Insured Property to store maintenance materials for all of his properties. Jeffrey stated that Pawtuxet performed no roof maintenance on the Insured Property between the date of purchase in May 2016 and the alleged damage occurring on 13 April 2020.

Jeffrey stated that he was at the Insured Property on April 11, 2020 and did not notice any damage to the roof. The roof damage was alleged to have occurred on April 13, 2020, and Jeffrey testified that he discovered the damage when he arrived at the Insured Property on the morning of April 14, 2020. Jeffrey stated that he normally enters and exits the building at the Insured Property through the front door, but that when he arrived on the morning of the loss, he noticed that someone had "dumped" a mattress at the side of the building, and when he went to examine the mattress, he viewed the back of the building and noticed the shingles on the ground. Jeffrey specifically stated that he looked up and saw the damage on the roof, and he immediately called Andrew to inform him of the damage. Jeffrey stated that Andrew then immediately engaged Jaedyn Construction to place tarps over the damaged portions of the roof to protect the building from further damage.[2]

Jeffrey stated that he understood that Pawtuxet's prior claim for the roof damage caused by wind had been denied and that the claim was re-submitted as being caused by vandalism. Jeffrey confirmed that, despite whatever investigation was undertaken by Pawtuxet, he had no information about who vandalized the roof of the building on or about April 13, 2020. Upon specific questioning regarding the security cameras, which Andrew had told the investigating police officer that he reviewed, Jeffrey stated that there is only a single camera on the Insured Property, which is located in an interior storage room. He said that the camera is set up to send an alert to his mobile telephone when anyone goes into the storage room. When asked if any alerts had been trigger around the dates of the alleged damage, Jeffrey indicated that there had not, and that the alert information is stored for only 30 days, so it is no longer available.

By letter dated October 23, 2020, we requested the examination under oath of Andrew, Pawtuxet's property manager, and also requested the following documents in advance of Andrew's examination: (1) videos, photographs and/or electronically-stored information (e.g., logs) regarding security surveillance at the Insured Property during the period of April 1-30, 2020; (2) electronic and/or telephonic communications between or among Jeffrey Butler, Andrew Butler and Dwayne Warner during the period of April 1-30,

---

[1] The return receipt for the delivery of this letter does not provide a precise date of delivery, although based on its return to us, we know that the letter was hand-delivered to Pawtuxet sometime prior to July 23, 2020. Pawtuxet was required to provide a signature upon delivery and wrote "Covid 19."

[2] Jaedyn Construction is operated by Dwayne Warner, who is also an employee of Jeffrey's property management company. Jeffrey stated that, when Mr. Warner does certain repair jobs for his properties, the services are billed to Jaedyn Construction and viewed as "side work" for Mr. Warner.

**WILSON ELSER**

2020; and (3) invoices, payments and/or bank records evidencing work by Dwayne Warner and/or Jaedyn Construction at the Insured Property.

In response to one of the numerous emails to your requesting the additional documents prior to Andrew's examination, Pawtuxet provided a copy of a quote for replacement of the roof from M. Weisman Roofing Co., Inc. in the amount of $237,975. Pawtuxet did not provide the majority of the requested documents until the evening before Andrew's examination. Even still, upon receipt, we immediately determined that about 80 of the approximately 100 images emailed by you were not electronically accessible (i.e., not viewable), and requested that the documents be provided in a usable format, but we did not receive a response to our request prior to Andrew's examination.

During his examination, Andrew (like Jeffrey previously) was unable to provide any information as to who may have caused the alleged vandalism to the roof. The alleged damage was said to have occurred on April 13, 2020, and Andrew testified that Jeffrey discovered the roof damage when he arrived at the Insured Property on the morning of April 14, 2020, after which Jeffrey called Andrew immediately to direct him to address the damage. Andrew stated that he immediately engaged Jaedyn Construction to place tarps over the damaged portions of the roof to protect the building from further damage. Pawtuxet provided a copy of an invoice from Jaedyn Construction in the amount of $4,425, with a handwritten notation stating "paid cash."

Upon specific questioning regarding the security cameras—which he had told the investigating police officer that he reviewed—Andrew stated that there were three cameras at the Insured Property which show images of only the interior of the building. When asked about his statements to the police that he has reviewed the camera footage, Andrew confirmed that the reviewed the security footage, but it did not depict anyone at the Insured Property, and so he did not preserve the footage. Andrew also stated that the cameras were "down" the night of the alleged damage (presumably the night bridging April 13-14, 2020), and further, that the camera footage or images are no longer accessible because they are only stored electronically for "30 or 45 days."

After completing questioning of Andrew based on the available information, and a discussion with you on the record, we suspended Andrew's examination with the understanding that Pawtuxet would provide the outstanding requested documentation (i.e., communications between Andrew, Jeffrey and Mr. Warner; and the security footage, if available), and we would resume Andrew's examination, if necessary.

Pawtuxet later provided accessible copies of previously requested communications in the form of text messages between Andrew, Jeff and Mr. Warner, totaling 106 pages. Our review of these communications produced only the following mentionable communications generally relevant to the claim:

- A text message from Mr. Warner to Jeffrey at 2:27 p.m. on April 14, 2020, the afternoon following the morning that the damage was discovered, in which he stated that "you have some roof damage on the south side of the building," accompanied by three photographs showing distant views of the Insured Property. At an unspecified time on the same day, Jeffrey responded "That sucks."

- A text message from Mr. Warner to Jeffrey at an unspecified date and time providing two viewable (and three non-viewable) photographs of the roof with tarps placed in various locations. Jeffrey appears to have responded to these pictures on April 22, 2020, at 6:57 p.m. stating "Thanks, looks good."

**WILSON ELSER**

- Messages between Andrew and Mr. Warner on April 22, 2020 at 5:06 p.m. showing Mr. Warner providing Andrew with seven photographs of the roof with tarps placed in various locations. Andrew responded the next day, April 23, 2020, at 2:36 p.m., stating: "Can you send me the pictures of the roof when it was damaged please[.]" Mr. Warner responded the same day providing more photographs of the tarped repaired roof, to which Andrew replied and asked: "Yes thank you. do you have the damage photos?" There was no response from Mr. Warner.

Upon our further request for clarification as to whether the outstanding security footage would be forthcoming, we received a letter from you offering the following explanation, in relevant part, regarding the non-production of security footage by Pawtuxet:

> After speaking with Mr. Butler once again, it occurred to me that I do not think we have been explaining the video system correctly. Also, I would like to talk with you to further explain. The video system at the property is a 'Blink System'. This means that it only operates if someone should enter the property. And we do know the system works because, on two (2) different occasions, intruders did enter the property, Mr. Butler was informed on his cell phone and the police were immediately called.
>
> Thus, the reason there was no video for this particular evening is that no motion was detected. The video only operates if someone enters the property. I will, however, inform you that after a period of time, the storage becomes full and it cleans itself out. This means that when Mr. Butler, whether Jeffrey or Andrew, or any other individual associated with the company enters the property, the video will record. After a period of time, the storage is full and it will empty.

The letter concluded with a request to speak with our office by telephone to discuss the letter. We spoke with you by telephone on December 18, 2020 to discuss the assertions made in the letter, during which you made two particular points which you wanted "made clear to the carrier": (1) the surveillance system does not record video until the sensors are activated, and because the sensors were never activated around the time of the roof damage, when Andrew went back to review the footage, there was no relevant footage; and (2) when Andrew spoke to police indicating that he had reviewed the footage surrounding the date of the roof damage, the police never requested that he preserved any footage, and so, any footage from the dates surrounding the roof damage was automatically erased due to the limited retention of the system.

### UNDERWRITERS' COVERAGE

Underwriters provided commercial property coverage, pursuant to Policy No. XSV12491, for the policy period of May 17, 2019 to May 17, 2020, with a building limit of $1,000,000, subject to a theft and/or vandalism malicious mischief deductible of $10,000.

The Policy provides, in relevant part, as follows:

### BUILDING AND PERSONAL PROPERTY
### COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

. . .

### A. Coverage

Case Number: PC-2021-03269
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Vict...

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 31 of 35 PageID #: 35

**WILSON ELSER**

Pawtuxet Village Properties, LLC
January 22, 2021
Page 6

3. **Covered Causes Of Loss**

See applicable Causes Of Loss Form as shown in the Declarations.

. . .

B. **Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

. . .

E. **Loss Conditions**

. . .

3. **Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

. . .

6. **Vacancy**

a. **Description Of Terms**

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

. . .

WILSON ELSER

      **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

          **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

          **(ii)** Used by the building owner to conduct customary operations.

    **(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      **(a)** Vandalism;

      . . .

      **(e)** Theft; or

      **(f)** Attempted theft.

    **(2)** With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

. . .

**CP 00 10 06 07**

### VACANCY PERMIT

This endorsement modifies insurance provided under the following:

    BUILDING AND PERSON PROPERTY COVERAGE FORM

   . . .

### SCHEDULE

| Prem. No. | Bldg. No. | Excepted Causes of Loss | | Permit Period | |
|---|---|---|---|---|---|
| | | Vandalism | Sprinkler Leakage | From | To |
| 1 | 1 | ☐ | ☐ | 05/17/19 | 05/17/20 |
| | | . . . | . . . | | |

**A.** The VACANCY Loss Condition does not apply to direct physical loss or damage:

    **1.** At the locations; and

    **2.** During the Permit Period;

      shown in the Schedule or Declarations.

**B.** This Vacancy Permit does not apply to the Excepted causes of Loss indicated in the Declarations or by an "X" in the Schedule.

**CP 04 50 07 88**

**WILSON ELSER**

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

. . .

**CP 00 90 07 88**

## CAUSES OF LOSS – SPECIAL FORM

### A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section **B.**, Exclusions; or

2. Limited in Section **C.**, Limitations;

that follow.

### B. Exclusions

. . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

. . .

  **d.** (1) Wear and Tear;

  (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or quality in property that causes it to damage or destroy itself;

  . . .

  (4) Settling, cracking, shrinking or expansion;

  . . .

  **h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**WILSON ELSER**

    **(1)** Acting alone or in collusion with others; or

    **(2)** Whether or not occurring during the hours of employment.

    This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

    . . .

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** though **3.c.** results in a Covered Cause of Loss, we will pay the loss or damage caused by that Covered Cause of Loss.

    . . .

  **c.** Faulty, inadequate or defective

    . . .

    **(2)** Design, specifications, workmanship, repair, construction, renovation, re-modeling;

    **(3)** Material used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

    of part or all of any property on or off the described premises.

    . . .

**CP 10 30 04 02**

## UNDERWRITERS' COVERAGE POSITION

There is no coverage for the claim for damage to the roof of the building at the Insured Property. Underwriters' investigation does not support coverage for any covered cause of loss, including vandalism.

The Building and Personal Property Coverage Form includes the Vacancy Loss Condition which provides that if the building where loss or damage occurs has been vacant for more than 60 consecutive days before the loss or damage occurs, the Policy does not pay for damage caused by theft, vandalism, or attempted theft. See Building and Personal Property Coverage Form, E.6.b.1. However, the Vacancy Permit endorsement provides that the Vacancy Loss Condition does not apply to direct physical loss or damage at the Insured Property during the policy period of May 17, 2019 to May 17, 2020. The Vacancy Permit endorsement includes an exception for Excepted Causes of Loss indicated in the Declarations or by an "X" in the Schedule. There is no "X" in the Schedule. Thus, there appears to be no exception to the Vacancy Permit, and therefore, the Vacancy Provision is nullified by the Vacancy Permit endorsement.

The Building and Personal Property Coverage Form states that Underwriters "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." See Building and Personal Property Coverage Form, A.1.a. The Building and Personal Property Coverage Form defines "Covered Cause of Loss" by reference to the "applicable Causes Of Loss Form as shown in the Declarations." See Building and Personal Property Coverage Form, A.3. The Commercial Property Coverage Part Declarations (Form CF 150 (11-85)) identifies the "Covered Causes of Loss" as "Sp. Incl Theft," meaning "Special Including Theft." In turn, the Causes of Loss - Special Form states that "When Special is shown in the Declarations, Covered Causes

Case Number: PC-2021-03719
Filed in Providence/Bristol County Superior Court
Submitted: 5/18/2021 11:13 AM
Envelope: 3105044
Reviewer: Vic

Case 1:21-cv-00260-MSM-PAS    Document 1-1    Filed 06/15/21    Page 35 of 35 PageID #: 39

**WILSON ELSER**

of Loss means Risks Of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations; that follow."

Underwriters' investigation of the claim does not support the contention that the damage to the roof was the result of vandalism. Based upon their independent inspections of the roof, both Mr. Sartini, Underwriters' independent adjuster, and Mr. Malo, Underwriters' engineer, concluded that the damage to the roof was man-made. However, Underwriters' considerable investigation did not reveal any evidence of vandalism of the building, including the roof. In fact, the evidence supports the conclusion that the roof shingles were removed with a roofing tool, which is evidenced by the consistency with which the removed shingles and securing nails remained intact upon removal. During their examinations under oath, both Jeffrey and Andrew indicated that they were not aware of any information as to who may have caused the alleged vandalism to the roof, or that it was in fact vandalized. Additionally, there is no video or photographic evidence which captured any form of vandalism at the Insured Property. The Warwick Police also concluded their investigation of Andrew's report of vandalism without any further investigation. Moreover, Pawtuxet reported that the damage was caused by wind, as opposed to vandalism, and that the roof damage was only reported to the police as vandalism after the claim was initially denied, at the supposed suggestion of Mr. Sartini.

Underwriters specifically reserve all of their rights under the Policy. Underwriters do not intend to waive their right to deny coverage for any other reason nor shall Underwriters be estopped from asserting any applicable defense. Underwriters further reserve their right to amend or supplement this denial as further review, investigation, and discovery warrant.

If you have any additional information that you believe might affect coverage, Underwriters invite you to provide that information to us. Thank you for your attention in this regard.

We are available to you to discuss Underwriters' coverage position. If, however, you wish to contact the Rhode Island Department of Business Regulation, you may do so at the address listed below. In certain limited circumstances the Department may have jurisdiction pursuant to R.I. Gen. Laws § 27-9.1-6 and therefore, you may be able to have the matter reviewed by the Department. The Department of Business Regulation does not have authority to settle or arbitrate claims, determine liability or order an insurer to pay a claim.

 Rhode Island Department of Business Regulation
 Insurance Division
 233 Richmond Street,
 Providence, RI 02903
 (401) 222-2223

Very Truly Yours,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

Thomas M. Bergeron

cc: Tyler Hougaboom, VANGUARD CLAIMS ADMINISTRATION, INC. (File No. XS076820)